UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY LOU GRANDE, et al.,

     Plaintiffs,

  v.

U.S. BANK NATIONAL ASSOCIATION, et al.,

     Defendants.

CASE NO. C19-333 MJP

ORDER GRANTING IN PART DENYING IN PART DEFENDANT'S MOTION TO DISMISS

  THIS MATTER comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 15). Having reviewed the Motion, the Response (Dkt. No. 20), the Reply (Dkt. No. 22), and all related papers, the Court GRANTS in part and DENIES in part Defendants' Motion.

**Background**

  This case involves a dispute over whether Plaintiffs entered into an agreement with Defendants to modify their loan payments in order to avoid foreclosure. In February 2007 the Plaintiffs, 79 year-old Mary Lou Grande and her son, Mark Grande, along with Ms. Grande's late husband Roderick Grande, borrowed $445,320.00 to purchase their home in Snohomish

County, where Roderick and Mary Lou planned to live out their retirement. (Dkt. No. 1, Ex. A ("Compl.") at ¶¶ 1-2, 11.) But in November 2014, Roderick Grande died after a prolonged battle with cancer. (Id. at ¶ 21.) Ms. Grande struggled with the medical debt and fell behind on house payments, making her last full payment on March 1, 2015. (Id. at ¶¶ 21-22.)

In May 2016, Defendant, Nationstar Mortgage LLC ("Nationstar"[1]), acting as attorney-in-fact for Defendant U.S. Bank National Association ("US Bank"), attempted to foreclose on the Property through a non-judicial foreclosure sale. (Id. at ¶¶ 23-24, 28.) In response, Plaintiffs hired an attorney to seek a loan modification and mediation pursuant to the Foreclosure Fairness Act (FFA), RCW 61.24.163. (Id. at ¶ 25.)

1. The TPP and July Offer

While the Parties were in mediation, Nationstar extended a trial period plan ("TPP") offer to the Plaintiffs, requiring them to make three monthly mortgage payments at a modified rate, from April to June 2017, in order to qualify for a permanent loan modification. (Id. at ¶ 29.) The TPP offer included an explanation of the necessary steps for converting the TPP into a permanent loan modification:

> Once you have successfully made each of your payments by their due dates, have submitted two signed copies of the modification agreement, and we have signed the modification agreement, our mortgage will be permanently modified in accordance with the terms of the modification agreement.

(Id. at ¶ 31; Dkt. No. 21, Ex. A at 5.) Plaintiffs completed the TPP by making three payments of $3,264.94 through Nationstar's website. (Id. at ¶¶ 32-34.)

On July 28, 2017 Nationstar sent the Plaintiffs an offer for a permanent loan modification, which they signed and returned to Nationstar. (Id. at ¶ 35.) Plaintiffs immediately

---

[1] In keeping with Defendants' Motion to Dismiss, Nationstar Mortgage LLC, doing business as Mr. Cooper, will be referred to as Nationstar throughout this Order. (Dkt. No. 15.)

attempted to make payments through Nationstar's website, as they had for the trial period payments, but could not. (Id. at ¶¶ 35-37.) Nationstar told the Plaintiffs that there was an issue with the paperwork on Nationstar's end, a new modification would be necessary, and payments could not be accepted until the modification paperwork was redone. (Id. at ¶¶ 38-39.) Nationstar also told both the Plaintiffs' attorneys and the mediator that "the reason for needing new docs to be generated was an error in the numbers on the new set." (Id. at ¶ 40.) The following week, after the mediator sought clarification, Nationstar's attorney responded that the error was a typo that "does not impact the fundamental terms of the modification offer, i.e. interest rate, loan term, etc." (Id. at ¶ 41.) The same day, Nationstar wrote to Plaintiffs:

> Nationstar is not accepting payments while the mod[ification] is being booked, the borrower will want to keep the funds available for the September and October payments since the mod[ification] is still expected to book with September 1, 2017 as the start date.

(Id. at ¶ 42 (internal alteration removed).)

### 2. The Other Offers

On September 22, 2017, Nationstar sent Plaintiffs a new offer with the same terms as the July offer, but with a single change: Nationstar now referred to itself as Mr. Cooper. (Id. at ¶¶ 43-44.) The Plaintiffs accepted, signed, and returned the new paperwork. (Id. at ¶ 44.)

On or about December 15, 2017 Nationstar sent a third modification to Plaintiffs, again with the same terms. (Id. at ¶¶ 48-52.) Both Plaintiffs' attorney and the FFA mediator asked Nationstar why another loan modification was necessary. (Id. at ¶ 54.) Nationstar responded that the modification was necessary because the Plaintiffs returned copies of the September loan modification paperwork, rather than the required "original docs." (Id. at ¶ 54.) Plaintiffs signed and returned the December Loan Modification to Nationstar on or about January 28, 2018. (Id. at ¶ 57.) Nationstar then denied Plaintiffs' loan modification and closed their case. (Id. at

¶¶ 58-60.) Plaintiffs immediately requested a formal reinstatement of the loan modification. (Id. at ¶ 63.)

On June 22, 2018, Plaintiffs sent Nationstar another letter, asserting they were willing and able to tender all payments due under the loan modification agreement, and again requesting that Nationstar allow Plaintiffs to reinstate the modification. (Id. at ¶ 66.) On September 28, 2018 Defendants ordered another Notice of Trustee's Sale on the Property, with a non-judicial foreclosure sale set for February 8, 2019. (Id. at ¶¶ 26, 72.)

Plaintiffs then brought this action against Defendants in Snohomish County Superior Court, alleging claims for breach of contract, breach of good faith and fair dealing, violation of the Washington Consumer Protection Act, negligent misrepresentation, violation of the Equal Credit Opportunity Act (ECOA), and for the tort of outrage. Defendants removed the case to this Court based on federal question and diversity jurisdiction.

**Discussion**

**I.     Judicial Notice**

As a preliminary matter, Plaintiffs request that the Court take judicial notice of: (1) the March 3, 2017 Trial Period Plan Offer; and (2) the July 28, 2017 Loan Modification Offer. (Dkt. No. 21.) The Court may take judicial notice of facts that are "not subject to reasonable dispute," Fed. R. Evid. 201(b), as well as documents like the ones at issue here: that are referred to in the complaint, that are central to the Plaintiffs' claims, and whose authenticity is undisputed. See, e.g., Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002). The Court therefore GRANTS Plaintiffs' Motion. (Dkt. No. 21.)

//

**II. Defendants' 12(b)(6) Motion to Dismiss**

**A. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**B. Claims against US Bank**

The Defendants first ask the Court to dismiss the claims against Defendant US Bank in their entirety because US Bank was not a party to any contract with Plaintiffs. (Dkt. No. 15 at 7.) Defendants also contend that because Plaintiffs admit US Bank conferred complete authority on Nationstar to service the loan, US Bank has no liability as a principal. (Id. at 8.) Both of Defendants' arguments cut against the basic tenets of agency law.

First, US Bank is liable for the actions of its agent, whether the contract was signed by US Bank or by Nationstar acting on behalf of US Bank. "In Washington, 'an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control.'" In re Butler, 550 B.R. 860, 867 (W.D. Wash. 2015) (quoting Bain v.

Metropolitan Mortg. Group, Inc., 175 Wn.2d 83, 101, 106 (2012)). Plaintiffs have successfully pled an agency relationship by alleging that Nationstar acted as attorney-in-fact for US Bank. (Compl. at ¶ 23.)

Further, agency is established by evaluating whether "'the principal had the right to control the details of the agent's performance,'" Wilcox v. Basehore, 187 Wn. 2d 772, 789 (2017) (quoting Chi. Title Ins. Co. v. Office of Ins. Comm'r, 178 Wn.2d 120, 143 (2013)). Plaintiffs' assessment that Nationstar had complete authority to service the loan is not dispositive when the inquiry is fact intensive and requires evaluation of whether US Bank retained the right to control Nationstar's performance. Id. This is especially so where US Bank explicitly asserted control over the modification process in the TPP offer:

> You were evaluated for mortgage payment assistance based on the eligibility requirements of US Bank N.A., the owner/guarantor/trustee of your mortgage loan. US Bank N.A. requirements for determining borrowers eligibility for a loan modification Trial Period Plan include the use of a hierarch evaluation approach . . . .

(Dkt. No. 21, Ex. A at 8.) Where the allegations and supporting documents suggest US Bank set the requirements for the loan, hired and had the power to terminate Nationstar, and paid for Nationstar's services, the Court declines to dismiss US Bank.

**C. Breach of Contract**

Defendants argue they had no legal or contractual duty to modify Plaintiffs' Loan and therefore did not breach any contract. (Dkt. No. 15 at 9.) Defendants' argument is contrary to the controlling Ninth Circuit case, Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 883 (9th Cir. 2013), as amended on reh'g in part (Sept. 23, 2013), which recognized that banks are required "to offer permanent modifications to borrowers who completed their obligations under the TPP, unless the banks timely notified those borrowers that they did not qualify." Plaintiffs' allegations that they fulfilled their obligations under the TPP without receiving a permanent loan

modification, and without being timely notified that they did not qualify (Compl. at ¶¶ 32-34), sufficiently establish "a valid claim for breach of the TPP agreement." Estes v. Wells Fargo Home Mortg., No. C14-5234 BHS, 2015 WL 362904, at *4 (W.D. Wash. Jan. 27, 2015) (quoting Corvello, 728 F.3d at 884 (9th Cir.2013)).

But Defendants argue they complied with their obligations under Corvello because they made an offer upon Plaintiffs' completion of the TPP, even if that offer was "rescinded and reissued." (Dkt. No. 22 at 6.) Defendants' argument describes precisely the type of unilateral authority that was of concern to the Corvello court: Permitting Defendants to offer and rescind a permanent loan modification until the borrowers eventually make a mistake, as Defendants contend Plaintiffs did in this case (Dkt. No. 15 at 11-13), is a "suspect" interpretation of the TPP that "would allow banks to avoid their obligations to borrowers" at any point of their choosing. Corvello, 728 F.3d at 883.

Further, based on the allegations before the Court, it cannot be said that Plaintiffs acquiesced in the "rescission" of the July permanent loan modification agreement. (Dkt. No. 22 at 6.) "Rescission can only occur when there is a mutual consent to rescind the contract, or a demand to rescind by one side with acquiescence by the other, [or] a material breach by one party with a claim of rescission by the other . . . ." Woodruff v. McClellan, 95 Wn. 2d 394, 397 (1980). "An agreement to rescind must itself be a valid agreement, meaning all parties to the contract must assent to rescission and there must be a meeting of minds." Coulombe v. Total Renal Care Holdings, Inc., No. C06-504JLR, 2007 WL 1367601, at *3 (W.D. Wash. May 4, 2007), aff'd, 298 F. App'x 617 (9th Cir. 2008).

Regarding Defendants' "rescission" of the July agreement, Plaintiffs were variously told there was an issue with the paperwork on Nationstar's end (Compl. at ¶¶ 38-39), "the reason for

needing new docs to be generated was an error in the numbers on the new set" (id. at ¶ 40), and the error was a typo that "does not impact the fundamental terms of the modification offer, i.e. interest rate, loan term, etc." (id. at ¶ 41). Finally, Nationstar told Plaintiffs to "keep the funds available for the September and October payments since the mod[ification] is still expected to book with September 1, 2017 as the start date." (Id. at ¶ 42). Based on these allegations it cannot be said there was a "meeting of the minds" or even that Plaintiffs understood Defendants were attempting a rescission.

Because Plaintiffs have successfully pled breach of contract based upon Plaintiffs' completion of the TPP and based upon Nationstar's July offer, Defendants' arguments regarding the September and December loan modification offers do not require evaluation.

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing because their pleadings neither demonstrate bad faith nor harm. (Dkt. No. 15 at 14.) The Court disagrees, and finds Plaintiffs have sufficiently alleged that Defendants breached the implied covenant of good faith and fair dealing.

"Under Washington law, '[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" Rekhter v. State, Dep't of Soc. & Health Servs., 180 Wash. 2d 102, 112-13 (2014) (quoting Badgett v. Sec. State Bank, 116 Wn.2d 563, 569 (1991)). "[T]he implied covenant of good faith and fair dealing cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." Rekhter, 180 Wn.2d at 113. The duty simply serves as "a check on whatever discretionary authority is granted to the

parties under the contract." <u>Lucero v. Cenlar FSB</u>, No. C13-0602RSL, 2016 WL 337221, at *6 (W.D. Wash. Jan. 28, 2016)

Plaintiffs allege Nationstar withdrew the July 2017 offer pursuant to the Errors and Omissions/Compliance Agreement, which gave Nationstar discretionary authority to correct any "errors" in the offer and required it to do so in good faith. <u>Id.</u> at *6; (Compl. at ¶ 83; Dkt. No. 21, Ex. B at 6.) Yet Plaintiffs have made numerous allegations that Defendants failed to act in compliance with this duty of good faith, alleging Defendants' refused to honor the signed modification agreement (Compl. at ¶ 80), refused to accept payments when there was no reason not to perform (<u>id.</u> at ¶ 81), and revoked the July agreement without providing an accurate explanation or a justifiable reason for doing so (<u>id.</u> at ¶¶ 38-42, 83).

Defendants also argue that even if they failed to act in good faith, Plaintiffs cannot demonstrate the July breach led to harm because Defendants provided them with a "new loan modification offer packet." (Dkt. No. 15 at 14.) But Defendants' alleged failure to honor the July 2017 agreement denied Plaintiffs the benefit of their bargain and ultimately led to Defendants' September 28, 2018 attempt to foreclose on the property (Compl. at ¶ 72), which constitutes sufficient harm to sustain a cause of action for breach of the implied covenant of good faith and fair dealing.

### E. Consumer Protection Act

In support of their CPA claim, the Plaintiffs allege Defendants undertook the TPP process and engaged in mediation with no intent to permanently modify the Plaintiffs' loan and voided the July 2017 agreement based on non-existent errors. (Compl. at ¶¶ 86(a)-(c).) "To prevail on a CPA action, the plaintiff must prove an '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

property; (5) causation.'" <u>Klem v. Washington Mut. Bank</u>, 176 Wn. 2d 771, 782 (2013) (citing <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780 (1986)). "Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA." <u>Klem</u>, 176 Wn.2d at 786. "Because the CPA addresses 'injuries' rather than 'damages,' quantifiable monetary loss is not required." <u>Frias v. Asset Foreclosure Servs., Inc.</u>, 181 Wn. 2d 412, 431 (2014). "Investigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." <u>Panag v. Farmers Ins. Co. of Washington</u>, 166 Wn. 2d 27, 62 (2009).

Defendants argue that because they replaced the July offer with another in September and yet another in December, and because Plaintiffs failed to validly accept the second and third offers, Plaintiffs' CPA claim fails as a matter of law. (Dkt. No. 15 at 15.) But assuming Defendants had no intent to offer Plaintiffs a permanent loan modification, as Plaintiffs allege, requiring Plaintiffs to make the TPP payments, incur fees in mediation, and repeatedly sign and mail their acceptance of the same offer—made in July, September, and December—constitutes an unfair or deceptive act or practice that caused the Plaintiffs injury. If this alleged practice is widespread and used to avoid Defendants' contractual obligations, it would undermine the very purpose of the TPP, and therefore affects the public interest. <u>Corvello</u>, 728 F.3d at 883. The Court finds Plaintiffs have successfully pled the elements of a CPA claim.

**F. Negligent Misrepresentation**

Defendants contend Plaintiffs' negligent misrepresentation claim fails because Plaintiffs have not alleged a false representation of existing fact at the time it was made and because the claim is barred under the economic loss rule. (Dkt. No. 15 at 16.) Neither argument bars

Plaintiffs' claim here.  First, while Plaintiffs allege Defendants made many false representations of existing fact (Compl. at ¶¶ 38-41), Plaintiffs' allegation that Defendants induced them to enter the TPP without the intention of permanently modifying their loan (id. at ¶ 97) constitutes negligent misrepresentation in and of itself.  Linh-Phuong Ngo Tang v. Bank of Am., N.A., No. C12-109 TSZ, 2012 WL 13024686, at *1 (W.D. Wash. July 19, 2012); see also Markov v. ABC Transfer & Storage Co., 76 Wn.2d 388, 396 (1969).  And the economic loss rule, now the independent duty doctrine, Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 385 (2010), does not bar Plaintiffs' claim where they allege Defendants' negligent misrepresentations induced them to enter the TPP.  (Compl. at ¶¶ 97-100); Donatelli v. D.R. Strong Consulting Engineers, Inc., 179 Wn.2d 84, 91 (2013) ("[T]he duty to avoid misrepresentations that induce a party to enter into a contract arise independently of the contract.").

### G. Equal Credit Opportunity Act

Plaintiffs allege Defendants violated the ECOA by failing to give notice or provide a reason for revoking the July 2017 permanent loan modification.  (Compl. at ¶¶ 103-16.)  "When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA."  Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1210 (9th Cir. 2013).  Defendants contend Plaintiffs' claim fails because Plaintiffs did not allege Defendants took an adverse action, as required for an ECOA claim.  (Dkt. No. 15 at 18.)  The Court disagrees.

The ECOA defines an "adverse action" as "a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).  "[A] lender revokes credit when it annuls, repeals, rescinds or cancels a right to defer payment of a debt."  Schlegel, 720 F.3d at 1211.  Plaintiffs allege

1 | Defendants made "a change in the terms of an existing credit arrangement" by rescinding
2 | Plaintiffs' right to pay off the loan at a modified rate when they canceled the July loan
3 | modification agreement. (Compl. at ¶¶ 104-08); Schlegel, 720 F.3d at 1211. Because Plaintiffs
4 | sufficiently allege the Defendants took an adverse action and failed to comply with the ECOA's
5 | notice requirements, they have established a claim under the ECOA. 15 U.S.C. § 1691e. The
6 | Court need not address Defendants' arguments regarding other possible claims under different
7 | sections of the Act. (Dkt. No. 15 at 17-18.)

### H. Tort of Outrage

Defendants seek to dismiss Plaintiffs' tort of outrage claim, arguing Plaintiffs have not made sufficiently extreme factual allegations nor pled any conduct that caused Plaintiffs emotional distress. (Dkt. No. 15 at 20-21.) To state a claim for the tort of outrage, a plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual severe emotional distress suffered by plaintiff. Birklid v. Boeing Co., 127 Wn.2d 853 (1995). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 85 Wn.2d 52, 59 (1975). "Although these three elements are questions of fact for the jury, the Court must initially 'determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.'" Sergeant v. Bank of Am., N.A., No. C17-5232 BHS, 2018 WL 1427345, at *5 (W.D. Wash. Mar. 22, 2018) (quoting Dicomes v. State, 113 Wn.2d 612, 630 (1989)).

Plaintiffs allege they suffered fear, depression, anger, and helplessness in response to Defendants repeatedly requiring Plaintiffs to execute new loan documents, especially because, as Defendants were aware, Ms. Grande was 79 years-old and a recent widow. (Compl. at ¶¶ 120,

124-27.) The Court finds these allegations are not sufficiently "outrageous," "extreme in degree," and "utterly intolerable in a civilized society" to establish a claim for the tort of outrage. Courts have found outrageous conduct in similar situations where the defendants induced the plaintiff to enter a loan modification agreement, accepted payments for more than two years, and then revoked the agreement, declaring the borrower in default and attempting to foreclose, Estes v. Wells Fargo Home Mortg., No. C14-5234 BHS, 2015 WL 362904, at *6 (W.D. Wash. Jan. 27, 2015), or engaging in similar conduct and also using a perjured declaration, Montgomery, 2014 WL 2048183, at *7 (W.D. Wash. May 19, 2014). Nothing as extreme or outrageous has been alleged in this case, and the additional fact of Ms. Grande's vulnerability cannot, without more, support Plaintiffs' claim of outrage. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1046 (9th Cir. 2011). The Court therefore dismisses this claim, without prejudice.

## Conclusion

For the reasons discussed herein, the Court:

1) GRANTS Plaintiffs' Request for Judicial Notice (Dkt. No. 21);

2) GRANTS in part and DENIES in part Defendants' Motion to Dismiss (Dkt. No. 15):

    a. The Court dismisses Plaintiffs' claim for the tort of outrage without prejudice, and;

    b. DENIES Defendants' Motion to Dismiss all other claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 18, 2019.

Marsha J. Pechman
United States District Judge